UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JODY MORGAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:15-cv-90 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Jody Morgan, on April 17, 2015. For the following reasons, the decision of the Commissioner is **REMANDED**.

*Background*

The plaintiff, Jody Morgan, filed an application for Supplemental Security Income on May 15, 2012, alleging a disability onset date of January 1, 2009. (Tr. 15). The Disability Determination Bureau denied Morgan's application on August 14, 2012, and again upon reconsideration on September 26, 2012. (Tr. 15). Morgan subsequently filed a timely request for a hearing on October 16, 2012. (Tr. 15). A hearing was held on May 3, 2013, before Administrative Law Judge (ALJ) Patricia Melvin, and the ALJ issued an unfavorable decision on August 15, 2013. (Tr. 15–24). Vocational Expert (VE) Charles H. McBee and Morgan testified at the hearing. (Tr. 15). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 5–7).

At step one of the five step sequential analysis for determining whether an individual is disabled, the ALJ found that Morgan had not engaged in substantial gainful activity since May

15, 2012, the application date. (Tr. 17). At step two, the ALJ determined that Morgan had the following severe impairments: bulging discs with lumbar radiculopathy, osteoarthritis, and chronic obstructive pulmonary disease. (Tr. 17). She also found that Morgan's carpal tunnel syndrome was non-severe because it did not have more than a minimal effect on her ability to perform work activities. (Tr. 17). The ALJ indicated that Morgan had a mild limitation in daily living activities. (Tr. 18). She noted that Morgan could drive, cross-stitch, read, watch television, shop, do her own laundry, change her bed, and mow her lawn with a riding mower. (Tr. 18). At step three, the ALJ concluded that Morgan did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 18).

The ALJ then assessed Morgan's residual functional capacity as follows:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can stand or walk 2 hours out of an 8 hour workday; she can never climb ladders, ropes and scaffolds; she can occasionally climb ramps and stairs; and she must avoid concentrated exposure to extreme cold, extreme heat, wetness and humidity; pulmonary irritants such as fumes, odors, and gases, chemicals, and poorly ventilated areas.

(Tr. 19). The ALJ explained that in considering Morgan's symptoms she followed a two-step process. (Tr. 19). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Morgan's pain or other symptoms. (Tr. 19). Then, she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Morgan's functioning. (Tr. 19).

Morgan testified that she had back pain from a herniated and a bulging disc, hip pain from arthritis, pain from carpal tunnel syndrome, and headaches. (Tr. 19). She stated that her

2

pain was seven or eight out of ten without medication and three out of ten with medication. (Tr. 19). She indicated that injections relieved some pain, that she used an inhaler daily for COPD, and that her inhaler controlled her COPD, despite smoking one pack of cigarettes daily. (Tr. 19). Morgan wore splints for her carpal tunnel syndrome, and her medication stabilized her hypertension. (Tr. 19). The ALJ found that Morgan's impairments could cause her alleged symptoms but that Morgan was incredible regarding the intensity, persistence, and limiting effects of her symptoms. (Tr. 19–20).

The ALJ then reviewed Morgan's objective medical evidence. (Tr. 20–22). She noted that Morgan had asthma, which caused shortness of breath, and that she used an inhaler three to four times a day. (Tr. 20). The ALJ indicated that Morgan had a moderate obstructive defect, but that Morgan underwent a cardiac workup and a stress test, which had normal results. (Tr. 20). Morgan complained of back pain, but the ALJ stated that examination records showed no apparent distress or back tenderness and that Morgan had a normal gait and reflexes. (Tr. 20). In March 2011, Morgan went to the emergency room for a panic attack, but a physical examination was normal and she was discharged in stable condition. (Tr. 20).

Morgan received treatment for lower back pain with Physical Medicine Consultants. (Tr. 20). She complained of pain ranging from zero to ten out of ten. (Tr. 20). Throughout her treatment from 2011 to 2012, Morgan's pain lessened to one or two out of ten. (Tr. 21). Additionally, she did not appear in distress, could transition from sitting to standing independently, had a normal and nonantalgic gait, and stated that she was doing "quite well." (Tr. 21). However, Morgan did have some pain to palpation along the midline of her lower back. (Tr. 21).

Morgan underwent a consultative examination with Dr. Gautham Gadiraju on November 15, 2010. (Tr. 21). She complained of lower back and hip pain that radiated into her legs with a severity of five or six out of ten. (Tr. 21). Morgan said she had difficulty performing tasks, like cleaning the dishes, but said she could dress herself, tie her shoes, and handle buttons. (Tr. 21). Dr. Gadiraju found that she had normal joint movement, normal heel and toe walking, normal tandem walking, a normal squat, and full range of motion in her cervical neck. (Tr. 21). He also noted that her gait was stable, she was not in acute distress, that she could carry twenty pounds thirty feet, and lift twenty pounds above her head. (Tr. 21). However, he did indicate that she had some tenderness to palpation in her upper back and lumbar spine. (Tr. 21). He recommended that she complete physical therapy and pain management. (Tr. 21).

Morgan also received treatment for lower back and hip pain at Fort Wayne Orthopedics throughout 2011. (Tr. 21). The ALJ noted that her physical examination was unremarkable and showed 5/5 strength in her legs. (Tr. 21). Internal and external rotation of Morgan's hip did not cause pain or discomfort, but she had some lumbar spine tenderness. (Tr. 21). A lumbar MRI was unremarkable, except for some paracentral disc herniation at 5-1, and an EMG showed subtle S1 radiculopathy. (Tr. 21).

On August 6, 2012, Dr. H. M. Bacchus performed a consultative examination, where Morgan complained of carpal tunnel syndrome, migraines, depression, anxiety, hypertension, bulging discs, osteoarthritis, and COPD. (Tr. 22). Morgan stated that she was diagnosed with osteoarthritis in her hips and back and that she was putting off back surgery. (Tr. 22). Dr. Bacchus indicated that Morgan completed her daily living activities independently, that she was alert and oriented, that she was not in acute distress, and that she could move on and off the examination table. (Tr. 22). However, he noted that she had some hip numbness with a positive

4

Tinel's sign, had minor deficits in her range of motion, and had some right leg numbness. (Tr. 22). Morgan's gait and station were normal, she could walk on her heels, tandem walk, hop, and squat, and her muscle strength was 5/5. (Tr. 22). Dr. Bacchus concluded that she could work full time while sitting six to eight hours a day and standing up to two hours a day in a climate-controlled environment to prevent COPD symptoms. (Tr. 22).

A July 13, 2012 lumbar spine MRI was stable with mild disc and vertebral degenerative changes at multiple levels. (Tr. 22). A November 20, 2012 view of Morgan's left hip was normal and showed no arthritic changes. (Tr. 22). December 2012 treatment notes from Physical Medicine Consultants indicated that Morgan had a stable, nonantalgic gait and that she could transition from sitting to standing without difficulty. (Tr. 22). Additionally, records from February 2013 noted that injections improved her pain by 70 to 80% and that she had no tenderness in her lower back. (Tr. 22).

The state agency opinions found that Morgan could perform medium work, but the ALJ limited her to light work considering her subjective complaints. (Tr. 22). The ALJ gave Dr. Bacchus's opinion significant weight because it was consistent with the objective medical evidence. (Tr. 22). The ALJ also noted Morgan's daily living activities and that she could concentrate and follow instructions. (Tr. 22). The ALJ concluded that the objective medical evidence supported her RFC assessment because the x-rays and MRI's showed mild degenerative changes and the treatment records noted a normal gait, an ability to transition from sitting to standing, and no apparent distress. (Tr. 22). Additionally, the ALJ stated that Morgan's inhalers controlled her COPD, which had not caused any serious breathing problems previously. (Tr. 22).

At step four, the ALJ found that Morgan had no past relevant work. (Tr. 23). Considering Morgan's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that she could perform, including production assembler (1,000 jobs locally and 90,000 jobs nationally), small product assembler (1,000 jobs locally and 50,000 jobs nationally), and hand packages inspector (500 jobs locally and 50,000 jobs nationally). (Tr. 23–24).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."); ***Pepper v. Colvin***, 712 F.3d 351, 361–62 (7th Cir. 2013); ***Schmidt v. Barnhart***, 395 F.3d 737, 744 (7th Cir. 2005); ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez***, 336 F.3d at 539.

Supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. § 416.920(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other

work and that such work exists in the national economy.  **42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f)**.

First, Morgan has argued that the ALJ's credibility finding was patently wrong.  This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record.  *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed.").  The ALJ's "unique position to observe a witness" entitles her opinion to great deference.  *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997); *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006).  However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference.  *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).  Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision."  *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  **20 C.F.R. § 404.1529(a);** *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record.").  If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs

8

and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F.R. § 404.1529(c);** *see Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005) ("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination "solely on the basis of objective medical evidence." SSR 96-7p, at *1; *see **Moore v. Colvin***, 743 F.3d 1118, 1125 (7th Cir. 2014) ("'[T]he ALJ cannot reject a claimant's testimony about limitations on her daily activities solely by stating that such testimony is unsupported by the medical evidence.'") (quoting *Indoranto*, 374 F.3d at 474); ***Carradine v. Barnhart***, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits."). Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. (internal citations omitted).

***Luna v. Shalala***, 22 F.3d 687, 691 (7th Cir. 1994); *see **Zurawski v. Halter***, 245 F.3d 881, 887-88 (7th Cir. 2001).

9

In addition, when the ALJ discounts the claimant's description of pain because it is inconsistent with the objective medical evidence, she must make more than "a single, conclusory statement . . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *2; *see* **Minnick v. Colvin**, 775 F.3d 929, 937 (7th Cir. 2015) ("[A] failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal.") (citations omitted); **Diaz v. Chater**, 55 F.3d 300, 307-08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his analysis of the evidence). She must "build an accurate and logical bridge from the evidence to her conclusion." **Zurawski**, 245 F.3d at 887 (quoting **Clifford v. Apfel**, 227 F.3d 863, 872 (7th Cir. 2000)). A minor discrepancy, coupled with the ALJ's observations is sufficient to support a finding that the claimant was incredible. **Bates**, 736 F.3d at 1098. However, this must be weighed against the ALJ's duty to build the record and not to ignore a line of evidence that suggests a disability. **Bates**, 736 F.3d at 1099.

Morgan has argued that the ALJ failed to identify any support for her credibility finding. She noted that the ALJ indicated that the objective medical evidence supported the RFC, but that the ALJ did not explain how it supported her credibility finding. The Commissioner has identified instances where the ALJ noted inconsistencies between Morgan's subjective complaints and the objective medical evidence. For example, the ALJ indicated that testing showed mild degenerative changes and that Morgan had a normal gait and full muscle strength, despite Morgan's complaints of disabling back pain. The Commissioner also has claimed that the ALJ relied on Morgan's inconsistent statements regarding her daily living activities. She

10

indicated that Morgan told Dr. Gadiraju that she had trouble doing dishes and preparing meals but that she told the agency that she drove, shopped, cooked, cleaned, mowed the lawn with a riding mower, and could concentrate and follow instructions.

The ALJ failed to build an accurate and logical bridge from the evidence to her credibility finding. The ALJ did identify inconsistencies between the objective medical evidence and Morgan's subjective complaints, but she could not reject Morgan's complaints based solely on the objective medical evidence. See **Moore**, 743 F.3d at 1125. Although the Commissioner has argued that the ALJ relied on Morgan's inconsistent statements regarding her daily living activities, the ALJ did not indicate that Morgan's statements were inconsistent or explain how they were inconsistent. However, even if the ALJ had relied on those statements, it is unclear why Morgan's 2010 statement that she had difficulty doing dishes and preparing meals was inconsistent with her statement, two years later, that she could drive, shop, cook, clean, mow with a riding mower, concentrate, and follow instructions. Furthermore, Morgan's 2012 statement also indicated that she could not cook big meals and that she needed her children to help with cleaning and household chores. (Tr. 242). Therefore, any inconsistency was minor and without any explanation by the ALJ, it does not provide a sound basis for the ALJ's credibility finding. See **Beardsley v. Colvin**, 758 F.3d 834, 838 (7th Cir. 2014).

The Commissioner also has claimed that the ALJ relied on Morgan's treatment to find her incredible. Again, the ALJ did not indicate or explain how Morgan's treatment rendered her incredible. The ALJ did mention that Morgan had put off surgery, but she did not inquire into Morgan's reasoning. See **Craft v. Astrue**, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p).

Because the ALJ did not explore Morgan's reasons for declining surgery, she could not rely on that to find Morgan incredible. Here, the ALJ did not provide a valid reason for finding Morgan incredible, except for the objective medical evidence. Therefore, the ALJ's credibility finding was patently wrong. She should provide more support for her finding on remand.

Second, Morgan has argued that the ALJ's RFC assessment was incomplete because she did not account for her carpal tunnel syndrome. SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what she must articulate in her written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, she cannot ignore evidence that undermines her ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not

support her conclusion and explain why that evidence was rejected.") (citations omitted). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

Morgan has argued that the ALJ's RFC assessment was incomplete because it did not acknowledge or account for any limitations from her carpal tunnel syndrome. She indicated that the ALJ found that it was a non-severe medically determinable impairment, but that she did not provide any explanation for that finding. Morgan has alleged that her carpal tunnel syndrome limited her ability to use her hands for more than one hour and that that limitation would preclude the jobs listed by the VE. The Commissioner has argued that the medical evidence did not support any work-related limitations due to carpal tunnel syndrome. Therefore, she has claimed that the ALJ did not need to discuss Morgan's carpal tunnel syndrome within her RFC assessment.

The ALJ found that Morgan's carpal tunnel syndrome was a non-severe impairment. (Tr. 17). However, she did not discuss the impairment any further. It is not clear why the ALJ did not include any restrictions based on Morgan's carpal tunnel syndrome or why the syndrome would not preclude Morgan from using her hands for a prolonged period. Because this matter is being remanded on a separate issue, the ALJ should consider whether Morgan's carpal tunnel syndrome would preclude prolonged use of her hands on remand.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this Order.

ENTERED this 4th day of April, 2016.

/s/ Andrew P. Rodovich
United States Magistrate Judge